IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

BRUMAN STALIN ALVAREZ, *

Plaintiff, *

v. * Civil No.: WDQ-10-179

CORRECTIONAL MEDICAL SERVICES, INC., et al. *

*

Defendants.

***

MEMORANDUM OPINION

Bruman Stalin Alvarez sued Corizon, LLC, ("Corizon")[1] Barbara Steele, H.S.A,[2] and John Moss, P.A., ("the Defendants") under 42 U.S.C. §1983[3] for violating his Eighth Amendment rights. Pending is the Defendants' motion to dismiss the First Amended

---

[1] Correctional Medical Services, Inc. ("CMS"), is now known as Corizon, LLC. *See* ECF No. 119 at 1.

[2] There has been inconsistent spelling of Ms. Steele's name; the Court will use the Defendants' spelling. *See* ECF No. 119.

[3] Under § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (2012).

Complaint. ECF No. 119. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Defendants' motion will be granted.

I. Background[4]

A. Facts

Alvarez is an inmate at the Jessup Correctional Institution ("Jessup"). ECF No. 114 ¶ 2. Corizon provided medical services to the Maryland Department of Corrections ("DOC") from the time Alvarez's Complaint arose until July 1, 2012. *Id.* ¶ 3.[5] Steele supervised Jessup's hospital. *Id.* ¶ 5. Moss is a physician's assistant responsible for the administration of medical care and for the welfare of hospitalized inmates. *Id.* ¶ 7.

On May 31, 2002, Alvarez first complained to Jessup medical personnel about pain in his left knee. *Id.* ¶ 10. In or about June 2004, Alvarez again complained that his left knee hurt and caused "a sensation as though there were pieces of rocks in the

---

[4] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Matters of public record include state court records and filings. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006).

[5] Corizon was responsible for the operation of the medical department. *See* ECF No. 114 ¶ 3.

knee"; he also had a decreased range of motion. *Id.* ¶ 11.

On September 28, 2004, Alvarez was seen by an orthopedic doctor who suspected Alvarez had a partial patellar tendon tear. *Id.* ¶ 12. On October 6, 2004, after continued pain, Alvarez requested an MRI (magnetic resonance imaging) of his left knee. *Id.* On December 10, 2004, Alvarez received an X-ray. *Id.* ¶ 13.

Between January 2005 and November 2007, Alvarez routinely complained to Dr. Motti Muletta[6] and Moss about pain in his left knee. *Id.* ¶ 14. Dr. Muletta and Moss prescribed pain medication, but Alvarez's pain continued. *Id.* A November 28, 2007 MRI of Alvarez's knee revealed a chronic bucket handle tear of the lateral meniscus that required immediate surgery. *Id.* ¶ 15.

On April 1, 2008, Alvarez had surgery on his left knee. *Id.* ¶ 16. The surgery was performed by Dr. Craig Bennett at the James L. Kernan Medical Center. *Id.* After the surgery, Dr. Bennett recommended that Alvarez receive a meniscus implant to prevent additional injury. *Id.*

In August 2008, Alvarez began having significant pain in his left knee, numbness in his left toes, and locking of the left knee. *Id.* ¶ 17. Alvarez requested the meniscus implant

[6] Motti Muletta, M.D., is a Defendant in this case. *See* ECF No. 114. Dr. Muletta is not a movant.

recommended by Dr. Bennett. *Id.*

In July 2009, Alvarez fell in the shower and injured his right knee. *Id.* ¶ 27. On July 29, 2009, Alvarez was seen by Moss for the right knee injury; Moss noted damage to Alvarez's right meniscus. *Id.*[7]

On September 18, 2009, Alvarez was seen by Dr. Bennett, who ordered that Alvarez be scheduled for the left meniscus implant. *Id.* ¶ 19. On September 3, 2010, Alvarez received the left meniscus implant. *Id.* ¶ 20. However, Alvarez continued to have intermittent pain in his left knee. *Id.* ¶ 21.

In January 2011, Alvarez received an MRI of his left knee, which revealed scar tissue needing removal. *Id.* ¶ 22. On July 26, 2011, Alvarez had surgery to remove the scar tissue. *Id.* Dr. Bennett recommended that Alvarez use an unloader brace for his left knee; despite several requests, Alvarez has not received the brace. *Id.* ¶ 23.

On August 23, 2011, Alvarez received an MRI of his right knee, revealing a lateral meniscus tear. *Id.* ¶ 30. On October

---

[7] From 2009 to 2011, Alvarez "complained of pain, weakness, instability[,] and dislocation in his right knee." ECF No. 114 ¶ 28. Despite numerous complaints of pain, between April 2010 and July 2011, Wexford Health Services, Inc. ("Wexford") denied Alvarez's requests to consult an orthopedic doctor. *Id.* ¶ 29. Wexford is a Defendant in this case, *see* ECF No. 114, but is not a movant.

21, 2011, Alvarez was seen by Dr. Ashok Krishnaswamy at Bon Secours Hospital ("BSH"), who recommended arthroscopic surgery on Alvarez's right knee. *Id.* ¶ 31. Wexford Health Services, Inc. ("Wexford"), did not approve the surgery. *Id.*

Alvarez continued to have pain in his right knee and requested the arthroscopic surgery recommended by Dr. Krishnaswamy. *Id.* ¶ 32. Alvarez received physical therapy for his right knee, which aggravated his symptoms. *Id.*

On August 3, 2012, Alvarez was seen by Dr. Krishnaswamy, who again recommended arthroscopic surgery on Alvarez's right knee. *Id.* ¶ 33. On October 1, 2012, Dr. Bennett noted that Alvarez was a candidate for arthroscopic surgery on his right knee. *Id.* ¶ 34.

In or around November 2012, Alvarez had a third arthroscopic surgery on his left knee. *Id.* ¶ 24. On May 13, 2013, during a consultation for both knees, Dr. Ashok Krishnaswamy noted that Alvarez's left knee symptoms continued to worsen. *Id.* ¶ 25.

As of February 3, 2014, Alvarez had not received the arthroscopic surgery on his right knee. *Id.* ¶ 35. Alvarez continues to have pain in both knees. *Id.* ¶¶ 26, 36.

B. Procedural History

On January 25, 2010, Alvarez sued the Defendants, alleging violations of the Eighth Amendment to the United States Constitution. ECF No. 1. On February 3, 2014, Alvarez filed a First Amended Complaint. ECF No. 114. On February 24, 2014, the Defendants moved to dismiss the First Amended Complaint. ECF No. 119. On March 14, 2014, Alvarez opposed the motion. ECF No. 127. On April 11, 2014, the Defendants replied. ECF No. 134.

II. Analysis

A. Standard of Review for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff

must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. The Defendants' Motion

The Defendants assert they are entitled to dismissal of Alvarez's claims arising before January 25, 2007, because they are barred by the statute of limitations. *See* ECF No. 119-1 at 2. The Defendants further assert that they are entitled to dismissal (1) as to Corizon, because *respondeat superior* does

not apply in § 1983 actions; (2) as to Steele, because Alvarez has not alleged facts showing that she personally participated in his medical care; and (3) as to Moss, because Alvarez has not alleged facts showing his wrongdoing with respect to Alvarez's right knee injury. *See id.*

1. Statute of Limitations[8]

The Defendants assert that--because Alvarez first complained of pain in his left knee to Jessup personnel on May 31, 2002--Alvarez's claim accrued in 2002 and, thus, any injuries suffered before January 25, 2007,[9] are time barred. *See* ECF No. 119-1 at 4. Alvarez asserts that his claim accrued on November 28, 2007, when he received the diagnosis of injury to his left knee. *See* ECF No. 127-1 at 4. Alvarez also asserts that the continuing violation doctrine applies to his case,

[8] This Court previously rejected the Defendants' statute of limitations argument, stating in a Memorandum Opinion resolving the Defendants' motion for summary judgment on the original Complaint: "Alvarez's claims concern the Defendants' failure to provide adequate follow-up treatment after his April 2008 knee surgery. His claims are not time-barred, and the Defendants' motion will not be granted on that basis." ECF No. 32 at 2 n.3. The Defendants argue that the First Amended Complaint, ECF No. 114, includes allegations concerning medical treatment dating back to 2002. *See* ECF No. 119-1. Alvarez argues that his claim accrued on November 28, 2007, and that the continuing violation doctrine applies to his case. *See* ECF No. 127-1 at 4. Therefore, the Court will reconsider the Defendants' argument.

[9] Three years before the date Alvarez filed his Complaint. *See* ECF Nos. 1, 119-1 at 4.

allowing him to challenge acts outside the limitations period. *See id.*

Maryland's statute of limitations for personal injury torts applies to Alvarez's § 1983 claims. *See Wallace v. Kato,* 549 U.S. 384, 387 (2007). The applicable statute of limitations is three years from the date the cause of action accrues. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *see Grattan v. Burnett,* 710 F.2d 160 (4th Cir.1983), *aff'd,* 468 U.S. 42 (1984). Allegations of delayed treatment may state a deliberate indifference claim under § 1983. *See, e.g., Loe v. Armistead,* 582 F.2d 1291, 1296 (4th Cir. 1978).

When harm results from a series of acts or omissions that together comprise an Eighth Amendment claim of deliberate indifference, the continuing violation doctrine may apply. *See Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009); *Al-Amin v. Hanceroth*, No. 3:11CV859-HEH, 2013 WL 4853364 (E.D. Va. Sept. 11, 2013). Under the continuing violation doctrine, "the plaintiff must establish that the unconstitutional or illegal act was a part of 'standard operating procedure,' a fixed and continuing practice." *Jones v. Frederick Cnty. Bd. of Educ.*, 689 F. Supp. 535, 539 (D. Md. 1988).[10] The cause of action

---

[10] For the continuing violation doctrine to apply, one unconstitutional act must occur within the statutory time

accrues upon the "last act evidencing the practice" and is timely if that act is within the limitations period. *Heaton v. Wray*, No. 8:09-2813-RMG, 2010 WL 5390118, at *4 (D.S.C. Nov. 10, 2010) *report and recommendation adopted in part*, No. 8:09-CV-281 3-RMG, 2010 WL 5387521 (D.S.C. Dec. 22, 2010).[11]

The Court finds that Alvarez's claim accrued on November 28, 2007. As discussed below,[12] deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical condition and that, subjectively, prison staff were aware of the need for medical attention and failed to provide it. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Here, on November 28, 2007, Alvarez's left knee MRI revealed a chronic bucket handle tear of the lateral meniscus requiring

---

period. *See Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir. 1983) (applying the doctrine in the context of employment discrimination). A policy of judicial economy lies behind the doctrine. *See Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir.2001) ("Not only would it be unreasonable to require [the plaintiff], as a condition of preserving his right to have a full two years to sue in respect of the last day on which his request was ignored, to bring separate suits two years after each of the earlier days of deliberate indifference; but it would impose an unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them.").

[11] *See also Heard*, 253 F.3d at 319 (continuing violation doctrine governed the date on which prisoner's Eighth Amendment deliberate indifference claim accrued); *Green v. Rubenstein*, 644 F. Supp. 2d 723, 747 (S.D.W. Va. 2009).

[12] *See infra* II.B.3.

immediate surgery. *See* ECF No. 114 ¶ 15. Thus, objectively, Alvarez suffered from a serious medical condition that, subjectively, prison staff were aware of and failed to treat for about four months. *See id.* ¶ 16; *see also Loe,* 582 F.2d at 1296 (prisoner waited almost 24 hours for treatment for a broken arm). As Alvarez filed his original Complaint on January 25, 2010, ECF No. 1, his claim is not barred by the statute of limitations.

Further, the continuing violation doctrine applies in this case. Alvarez has alleged facts showing consistent delays in treatment dating back to 2004. He waited months, even years, before receiving various tests and surgical procedures recommended by his physicians, and is still awaiting treatment for his right knee. *See* ECF No. 114 ¶¶ 11-36; *see also Shomo*, 579 F.3d at 182 (continuing violation doctrine applies when prison doctors and personnel disregarded treatment recommendations). Accordingly, the Defendants' conduct from in or about June 2004 is actionable as part of this claim.

2. *Respondeat Superior*

Corizon asserts that, as a private entity providing medical services through its employees, it cannot be held liable under the theory of *respondeat superior*. *See* ECF No. 119-1 at 4-5. Alvarez asserts that Corizon may be held liable because actions

taken by Dr. Muletta and Moss "constitute execution of Corizon's policies." *See* ECF No. 127-1 at 7.

*Respondeat superior* liability generally does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Nedd v. Correctional Med. Serv.*, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992) (*citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982)). *Respondeat superior* liability may apply "when an official policy or custom of the corporat[e defendant] causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, (1978) (execution of government policy by lawmakers may give rise to municipal liability under § 1983). In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), in the context of municipal liability, the U.S. Supreme Court explained:[13]

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held

[13] *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982), extended application of the doctrine to private entities.

> liable. . . . We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* at 481-83 (internal citations and footnotes omitted).

Here, Alvarez has not alleged facts showing that Corizon had an official policy or custom of denying medical care or that Dr. Muletta and Moss had final responsibility for establishing Corizon policy on the provision of medical care.[14] Therefore, Corizon is entitled to dismissal.

3. Denial of Medical Care

Moss asserts that he is entitled to dismissal because Alvarez alleged insufficient facts about his treatment of Alvarez's right knee injury. *See* ECF No. 119-1 at 7. Steele asserts that she is entitled to dismissal because Alvarez's First Amended Complaint lacks any factual allegations against her. *See id.* at 5-6. Alvarez asserts that Moss's knowledge of

---

[14] Alvarez argues that each treatment choice made by Dr. Muletta and Moss was a "deliberate choice to follow a course of action . . . among various alternatives . . . with respect to the subject matter in question[,]" and that each decision was, therefore, the policy of Corizon. ECF No. 127-1 at 9 (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Beyond the absence of alleged facts, Alvarez's argument ignores the distinction between acts of the employer and acts of the employee, *see Vincent v. Prince George's County, Maryland*, 157 F. Supp. 2d 588, 592 (D. Md. 2001), and the requirement that entities be held liable only for actions for which they are responsible, *see Pembaur*, 478 U.S. at 477-80.

damage to Alvarez's right meniscus, and his overall involvement in Alvarez's medical care, should bar dismissal of claims against Moss. *See* ECF No. 127-1 at 9-12. Alvarez requests leave to amend his complaint against Steele. *See id.* at 11.

The Eighth Amendment bars "unnecessary and wanton infliction of pain" by its prohibition of cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).[15] To state an Eighth Amendment claim for denial of medical care, a prisoner must demonstrate that the actions or omissions of the defendants amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, prison staff were aware of the need for medical attention, but failed to provide it or ensure that needed care was available. *See Farmer*, 511 U.S. at 837.[16]

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with

---

[15] "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

[16] *See also Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'"); *Howell v. Tanner*, 650 F.2d 610, 615 (5th Cir. 1981).

unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (*quoting Farmer*, 511 U.S. at 844). A health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

If subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant knew at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2011); (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)). Mere negligence does not give

rise to a constitutional claim. *See Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006) (*quoting Farmer*, 511 U.S. at 835).

Alvarez has alleged insufficient facts showing Moss's personal involvement in the denial of medical care. Alvarez alleges that Moss prescribed pain medication in response to his complaints of pain in his left knee and noted damage to Alvarez's right meniscus following his fall in the shower. *See* ECF No. 114 ¶¶ 14, 27. Taken alone, these facts do not support the inference that Moss was deliberately indifferent to Alvarez's right knee injury or otherwise delayed his treatment.

Further, this Court rejects Alvarez's argument that the "Amended Complaint in its entirety alleges P.A. Moss's personal participation in Alvarez's treatment, or lack thereof . . . ." *See* ECF No. 127-1 at 9. Absent specific allegations concerning Moss's personal involvement, this Court may not "draw the reasonable inference that [Moss] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557).[17] Moss is entitled to dismissal.

Recognizing the deficiency of his allegations against Steele, Alvarez has requested leave to amend. *See* ECF No. 127-1

---

[17] At most, in light of Moss's responsibility for inmate welfare, the Amended Complaint has alleged facts supporting Moss's negligence. Deliberate indifference, however, requires more than mere negligence. *See Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006).

at 11.[18] Alvarez argues that Federal Rule of Civil Procedure 15(a)'s liberal amendment policy governs his request. *See id.* Steele asserts that Alvarez must first satisfy the good cause requirements of Federal Rule of Civil Procedure 16(b), which governs pretrial scheduling. *See* ECF No. 134 at 12. Steele is correct.

On January 15, 2014, this Court issued an Amended Scheduling Order, setting February 3, 2014 as the deadline for amendments to the Complaint. *See* ECF No. 113. When the deadline provided by the scheduling order has passed, Rule 16(b)(4) governs requests for leave to amend rather than the more liberal standard of Rule 15(a). *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("This result is consistent with rulings of other circuits" assessing the interplay between the two rules); *Montgomery v. Anne Arundel Cnty., Maryland*, 182 F. App'x 156, 162 (4th Cir. 2006) ("Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party.").

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("[A] court's scheduling order is not a

---

[18] Alvarez also requests leave to amend his claims against Corizon and Moss. *See* ECF No. 127 at 2.

frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

Good cause exists when "the moving party has diligently made efforts to meet court imposed deadlines," or when evidence came to light after the deadline. *See Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010) (citations omitted). Leave to amend may be denied when the moving party was careless or failed to explain the reason for failing to properly plead. *See id.* at 769; *Rassoull*, 209 F.R.D. at 374 ("[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.") (*quoting Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va.1995)). Once good cause is shown, leave should freely be given when justice requires. Fed. R. Civ. P. 15(a)(2).

Alvarez has not provided an explanation for his failure to state factual allegations against Steele.[19] Absent good reason for a tardy submission, a district court does not abuse its discretion in refusing leave to amend. *See Montgomery*, 182 Fed. App'x at 162; *Rassoull*, 209 F.R.D. at 374 ("[I]t would behoove Plaintiff to provide the Court with some basis on which to judge

[19] The evidence proffered by Alvarez, *see* ECF No. 127-1 at 11, was long known to Alvarez as it was argued in his June 27, 2010 opposition to a prior motion. *See* ECF No. 32 at 2.

good cause and Plaintiff has failed to do so."). Accordingly, Alvarez's request for leave to amend will be denied.[20]

III. Conclusion

For the reasons stated above, the Defendants' motion to dismiss will be granted.

9/16/14
Date

William D. Quarles, Jr.
United States District Judge

[20] Alvarez also has not offered good cause for his failure to allege additional facts against Corizon and Moss, and his request for leave to amend those claims will also be denied.