IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

BRUMAN STALIN ALVAREZ,       \*

Plaintiff,       \*

v.       \*       Civil No.: WDQ-10-179

CORRECTIONAL MEDICAL SERVICES,  \*
INC., et al.
       \*
Defendants.

\*\*\*

MEMORANDUM OPINION

Bruman Stalin Alvarez sued Wexford Health Sources, Inc.

("Wexford"), John Moss, P.A., and others[1] (the "Defendants"),

under 42 U.S.C. §1983[2] for violating his Eighth Amendment rights.

---

[1] Alvarez also sued Correctional Medical Services, Inc., which is now known as Corizon, LLC ("Corizon"), Barbara Steele, H.S.A., and Motti Mulleta, M.D.  ECF No. 114. The Court dismissed all claims against Corizon and Steele.  ECF No. 150.  Corizon's counsel declined to accept service for Dr. Mulleta because he is no longer employed by Corizon.  *See* ECF Nos. 5, 32 at 1 n.32. Because Dr. Mulleta has not been served with the complaint (or the amended complaint) within the time required by Rule 4(m), Alvarez will be ordered to show cause why claims against Mulleta should not be dismissed without prejudice.  *See* Fed. R. Civ. P. 4(m)("If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

[2] Under § 1983,

    [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

Pending are Wexford's and Moss's motions for judgment on the pleadings, ECF Nos. 145, 147, and Alvarez's *pro se* motion for reconsideration, ECF No. 147.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the following reasons, Alvarez's and Wexford's motions will be denied; Moss's motion will be granted.

I.   Background

     A.   Facts[3]

     Alvarez is an inmate at the Jessup Correctional Institution ("Jessup").  ECF No. 114 ¶ 2.  Wexford "was the Utilization Management Contractor [("UMC")] for the Maryland Department of Correction [("MDOC")] during the relevant time period."  *Id.* ¶ 4.  As UMC, Wexford "evaluat[ed] . . . the appropriateness, medical need[ for,] and efficiency of health care services" for the MDOC.  *Id.*  On July 1, 2012, "Wexford became the medical

---

     be liable to the party injured in an action at law,
     suit in equity, or other proper proceeding for
     redress, except that in any action brought against a
     judicial officer for an act or omission taken in such
     officer's judicial capacity, injunctive relief shall
     not be granted unless a declaratory decree was
     violated or declaratory relief was unavailable.
42 U.S.C. § 1983 (2012).

[3] On a motion for judgment on the pleadings, as in a motion to dismiss, the well-pled allegations in the complaint are accepted as true.  *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002); *see also Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

services provider for the [MDOC]."  *Id.*[4]  In that capacity,
Wexford was "legally responsible for the operation of . . .
Jessup['s] . . . hospital and for the medical care and welfare
of all inmates of the prison."  *Id.*  Moss is a physician's
assistant responsible for the administration of medical care and
the welfare of hospitalized inmates.  *Id.* ¶ 7.

       1.   Alvarez's Left Knee

On May 31, 2002, Alvarez first complained to Jessup medical
personnel about pain in his left knee.  *Id.* ¶ 10.  In June 2004,
Alvarez again complained that his left knee hurt and caused "a
sensation as though there were pieces of rocks in the knee"; he
also had a decreased range of motion.  *Id.* ¶ 11.

On September 28, 2004, Alvarez was seen by an orthopedic
doctor who suspected Alvarez had a partial patellar tendon tear.
*Id.* ¶ 12.  On October 6, 2004, after continued pain, Alvarez
requested an MRI (magnetic resonance imaging) of his left knee.
*Id.*  On November 16, 2004, the orthopedic doctor requested that
Alvarez receive an MRI.  *Id.* ¶ 13.  On December 10, 2004,
Alvarez received an X-ray of his left knee.  *Id.*

Between January 2005 and November 2007, Alvarez routinely
complained to Dr. Muletta and Moss about "excruciating pain" in
his left knee.  *Id.* ¶ 14.  Dr. Muletta and Moss prescribed pain

---

[4] Corizon provided medical services to the Maryland Department of
Corrections ("DOC") from the time Alvarez's claim arose until
July 1, 2012.  ECF No. 114 ¶ 3.

medication, but Alvarez's pain continued.  *Id.*  A November 28,
2007 MRI of Alvarez's knee revealed a chronic bucket handle tear[5]
of the lateral meniscus that required immediate surgery.  *Id.*
¶ 15.

On April 1, 2008, Alvarez had surgery on his left knee.
*Id.* ¶ 16.  The surgery was performed by Dr. Craig Bennett at the
James L. Kernan Medical Center.  *Id.*  After the surgery, Dr.
Bennett recommended that Alvarez receive a meniscus implant to
prevent additional injury.  *Id.*

In August 2008, Alvarez began having significant pain in
his left knee, numbness in his left toes, and locking of the
left knee.  *Id.* ¶ 17.  Alvarez requested the meniscus implant
recommended by Dr. Bennett.  *Id.*

On September 18, 2009, Alvarez was seen by Dr. Bennett, who
ordered that Alvarez be scheduled for the left meniscus implant.
*Id.* ¶ 19.  On September 3, 2010, Alvarez received the left
meniscus implant.  *Id.* ¶ 20.  However, Alvarez continued to have
intermittent pain in his left knee.  *Id.* ¶ 21.

In January 2011, Alvarez received an MRI of his left knee,
which revealed scar tissue needing removal.  *Id.* ¶ 22.  On July

---

[5] "A bucket handle tear is a tear around the rim of the
meniscus," which causes "the central portion (i.e., the bucket-
handle) to displace into the joint."  Stacey Vaughn, *What does a
bucket have to do with a knee? Crack this knee coding mystery*
(July 5, 2011), http://www.justcoding.com/268198/What-does-a-
bucket-have-to-do-with-a-knee-Crack-this-knee-coding-mystery.

26, 2011, Alvarez had surgery to remove the scar tissue. *Id.*
Dr. Bennett recommended that Alvarez use an unloader brace for
his left knee; despite several requests, Alvarez has not
received the brace. *Id.* ¶ 23.

In November 2012, Alvarez had a third arthroscopic surgery
on his left knee. *Id.* ¶ 24. On May 13, 2013, during a
consultation for both knees, Dr. Ashok Krishnaswamy at Bon
Secours Hospital ("BSH") noted that Alvarez's left knee symptoms
continued to worsen. *Id.* ¶ 25.

2.   Alvarez's Right Knee

In July 2009, Alvarez fell in the shower and injured his
right knee. *Id.* ¶ 27. On July 29, 2009, Alvarez was seen by
Moss for the right knee injury; Moss noted damage to Alvarez's
right meniscus. *Id.*

From 2009 to 2011, Alvarez "complained of pain, weakness,
instability[,] and dislocation in his right knee." *Id.* ¶ 28.
Despite numerous complaints of pain, between April 2010 and July
2011, Wexford denied Alvarez's requests to consult an orthopedic
doctor. *Id.* ¶ 29.

On August 23, 2011, Alvarez was seen by an orthopedic
doctor. *Id.* ¶ 30. On September 2, 2011, Alvarez received an
MRI of his right knee, revealing a lateral meniscus tear. *Id.*
On October 21, 2011, Alvarez was seen by Dr. Krishnaswamy, who
recommended arthroscopic surgery on Alvarez's right knee. *Id.* ¶

31.  Wexford denied the surgery.  *Id.*

Alvarez continued to have pain in his right knee and requested the arthroscopic surgery recommended by Dr. Krishnaswamy.  *Id.* ¶ 32.  Alvarez received physical therapy for his right knee, which aggravated his symptoms.  *Id.*

On August 3, 2012, Alvarez was seen by Dr. Krishnaswamy, who again recommended arthroscopic surgery on Alvarez's right knee. *Id.* ¶ 33.  On October 1, 2012, Dr. Bennett noted that Alvarez was a candidate for arthroscopic surgery on his right knee.  *Id.* ¶ 34.

As of February 3, 2014, Alvarez had not received the arthroscopic surgery on his right knee.  *Id.* ¶ 35.  Alvarez continues to have pain in both knees.  *Id.* ¶¶ 26, 36.[6]

B.  Procedural History

On January 25, 2010, Alvarez sued the Defendants, alleging violations of the Eighth Amendment to the United States Constitution.  ECF No. 1.  On February 3, 2014, Alvarez filed an amended complaint.  ECF No. 114.

On February 24, 2014, Corizon, Steele, and Moss sought dismissal of the amended complaint in its entirety as to Corizon and Steele, and partial dismissal of the amended complaint with respect to Alvarez's right knee injury as to Moss.  ECF No. 119.

---

[6] On March 27, 2014, Alvarez had arthroscopic surgery on his right knee.  ECF No. 152-1 at 6.

On September 16, 2014, the Court granted the motion.  ECF No. 142.[7]

On October 6, 2014, Alvarez requested clarification on whether the Court had dismissed all claims against Moss, or claims in connection with Alvarez's right knee.  ECF No. 143.

On October 8, 2014, Wexford moved for judgment on the pleadings.  ECF No. 145.[8]

On October 10, 2014, Alvarez moved, *pro se*, for reconsideration of the Court's September 16, 2014 Order.  ECF No. 147.[9]

On October 15, 2014, the Court amended its September 16, 2014 Memorandum Opinion and Order to clarify that Moss, as requested, was entitled to partial dismissal only as to Alvarez's right knee.  ECF Nos. 149, 150.

On October 17, 2014, Moss moved for judgment on the

---

[7] The Court also denied Alvarez's motion for leave to file a second amended complaint for failure to show good cause.  ECF Nos. 141 at 16-18; 142.

[8] Although captioned as a "motion to dismiss," Wexford moved under Rule 12(c), which governs motions for judgment on the pleadings.  *See* ECF No. 145; Fed. R. Civ. P. 12(c).

[9] Neither Corizon, Steele, nor Moss opposed Alvarez's *pro se* motion; however, they did oppose the request for clarification filed by Alvarez's attorney.  ECF No. 144.  Under the Local Rules, "[w]hen a party is represented by counsel, the Clerk shall accept for filing only documents signed by [counsel]." Local Rule 102.1.a (D. Md. 2014).  Nevertheless, in the interest of generating a complete record, the Court will address Alvarez's motion for reconsideration.

pleadings.  ECF No. 151.

On October 27, 2014, Alvarez opposed Wexford's motion.  ECF No. 152.  On November 3, 2014, Alvarez opposed Moss's motion. ECF No. 153.  On November 13, 2014, Wexford replied.  ECF No. 156.  On November 20, 2014, Moss replied.  ECF No. 157.

## II.   Analysis

### A.   Legal Standards

#### 1.   Reconsideration

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration.  *Auto Services Co. v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008).[10]  A party may move to alter or amend a final judgment under Rule 59(e), or for relief from a final judgment or order under Rule 60.  *See* Fed. R. Civ. P. 59(e), 60.  Generally, interlocutory orders are subject to modification under Rule 54(b) "prior to the entry of a final judgment adjudicating the claims to which they pertain." *Williams v. Cnty. of Westchester*, 171 F.3d 98, 102 (2d Cir. 1999); Fed. R. Civ. P. 54(b).  Because the Court's September 16, 2014 Order was interlocutory, Rule 54(b) governs.[11]

---

[10] *But see* Local Rule 105.10 (D. Md. 2014) ("Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider issued by the Court shall be filed with the clerk not later than fourteen (14) days after entry of the order.").

[11] A "judgment" is "a decree and any order from which an appeal lies." *Auto Servs. Co.*, 537 F.3d at 856 (*quoting* Fed. R. Civ. P. 54(a)) (internal quotation marks omitted).  An appeal lies

Under Rule 54(b), "any order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).[12] Thus, when merited, a district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).[13] Resolution of the motion is "committed to the discretion of the district court," *id.* at 515, and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (internal citations omitted).

Although Rule 60(b) applies only to final judgments or orders, a court may consider the reasons in that rule when deciding whether to grant relief under Rule 54(b).[14] *See*

---

when the Court renders a final judgment. *Hinton v. Two Attorneys At Law*, 816 F.2d 672 (4th Cir. 1987). Because the Court's September 16, 2014 Order adjudicated the rights and liabilities of fewer than all of the parties, it was interlocutory. *Id.*; Fed. R. Civ. P. 54(b).

[12] *See Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL 3633339, at *4 (D. Md. Oct. 27, 2009).

[13] *See also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.").

[14] Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct

*Fayetteville Investors*, 936 F.2d at 1470; *Mateti*, 2009 WL
3633339, at *4.  Relief under Rule 60(b) is not authorized when
the movant merely asks the Court to "change its mind."
*Pritchard v. Wal-Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir.
2001).  However, as a general rule, "review of an interlocutory
order under Rule 54 is not subject to the restrictive standards
of motions for reconsideration of final judgments under Rule
60." *Fayetteville Investors*, 936 F.2d at 1472.

      2.   Judgment on the Pleadings

    The same standard of review applies to Rule 12(c) motions
for judgment on the pleadings and motions to dismiss for failure
to state a claim under Rule 12(b)(6).  *Burbach Broad. Co. of
Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002).
Rule 12(b)(6) motions test the legal sufficiency of a complaint,
but do not "resolve contests surrounding the facts, the merits
of a claim, or the applicability of defenses." *Presley v. City
of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006).

    The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader
is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l
Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's
notice-pleading requirements are "not onerous," the plaintiff

---

by the opposing party; (4) voidness; (5) satisfaction; or (6)
any other reason that justifies relief.  Fed. R. Civ. P. 60(b).

must allege facts that support each element of the claim
advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,
764-65 (4th Cir. 2003). These facts must be sufficient to
"state a claim to relief that is plausible on its face." *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[]
facts that are 'merely consistent with a defendant's
liability'"; the facts pled must "allow[] the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must
not only allege but also "show" that the plaintiff is entitled
to relief. *Id.* at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not shown—that the pleader is entitled to
relief." *Id.* (internal quotation marks and alteration omitted).

B.   Alvarez's Motion

Alvarez seeks reconsideration on the ground that he
believed "that the Amended Complaint did not replace the
original set of facts alleged in the original complaint[,] and
that it serve[d] only to add new [d]efendants." ECF No. 147 at

2.[15] Alvarez further notes that the Court previously denied a motion for summary judgment filed in connection with the original complaint. *Id.* at 1.

"It is well settled that an amended pleading supersedes the original pleading . . . ." *Blount v. Carlson Hotels*, 3:11CV452-MOC-DSC, 2011 WL 6098697, at *1 (W.D.N.C. Dec. 6, 2011) (*citing Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) ("The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect.")). Even under the less stringent standard applied to Rule 54(b) motions, Alvarez's apparent belief about the purpose of the amended complaint is not a basis for reconsideration. *See Fayetteville Investors*, 936 F.2d at 1470. Further, the Court previously amended its September 16, 2014 Memorandum Opinion and Order to clarify that claims against Moss only as to Alvarez's right knee injury had been dismissed. ECF No. 149, 150. Accordingly, Alvarez's motion will be denied.

C.   Moss's Motion

Moss argues that he is entitled to dismissal because the amended complaint "contains insufficient allegations to support

---

[15] Alvarez also asks the Court to "withheld [*sic*] the February 24, 2014 decision and order." ECF No. 147 at 4. It is unclear as to which order Alvarez is referring because no orders were docketed on or around that date. Corizon, Steele, and Moss moved to dismiss the complaint on that date, *see* ECF No. 119; however, the Court may not withhold or withdraw the parties' motion.

a claim against [him]" in connection with the medical treatment of Alvarez's left knee.  ECF Nos. 151, 151-1 at 5-7.  Alvarez argued that Moss disregarded the risk to his left-knee when he "responded [to Alvarez's complaints] with mild pain medication." ECF No. 153-1 at 5.

The Eighth Amendment bars "unnecessary and wanton infliction of pain" by its prohibition of cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).[16]  To state an Eighth Amendment claim for denial of medical care, a prisoner must demonstrate that the actions or omissions of the defendants amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, prison staff were aware of the need for medical attention, but failed to provide it or ensure that needed care was available.  *See Farmer*, 511 U.S. at 837.[17]

---

[16] "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

[17] *See also Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'"); *Howell v. Tanner*, 650 F.2d 610, 615 (5th Cir. 1981).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (*quoting Farmer*, 511 U.S. at 844). A health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

If subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant knew at the time. *Brown v.*

14

*Harris*, 240 F.3d 383, 390 (4th Cir. 2011); (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).  Mere negligence does not give rise to a constitutional claim.  *See Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006) (*quoting Farmer*, 511 U.S. at 835).

Here, Alvarez alleges that from January 2005 to November 2007 Moss responded to his routine complaints by prescribing pain medication that failed to relieve the pain in Alvarez's left knee.  ECF No. 114 ¶ 14.  However, there is no indication that Moss's response was unreasonable because Alvarez had not been diagnosed with a chronic bucket handle tear of the lateral left meniscus.  *See Brown*, 240 F.3d at 390; ECF No. 114 ¶¶ 14-15.  Further, absent exceptional circumstances, mere disagreement about a course of treatment does not give rise to a § 1983 claim.  *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Alvarez argues that "each allegation against medical care providers impliedly includes [Moss]"; further, because Moss had been his treating physician assistant, "Moss would have been privy to [Alvarez's] complaints either directly or indirectly" and he "would have been aware that an MRI was requested."  ECF No. 153-1 at 3-5.  Alvarez also argues that because his complaints and requests for treatment had been logged by Jessup

15

medical personnel, Moss was aware of "symptoms in his left knee." *Id.* at 5-6.

Absent specific allegations concerning Moss's personal involvement, this Court may not draw a reasonable inference that Moss denied Alvarez medical care. *See Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). Additionally, Alvarez's belated attempt in his opposition to charge Moss with awareness of Alvarez's requests and complaints to show deliberate indifference is unavailing; as noted above, Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Presley*, 464 F.3d at 483. Moss is entitled to dismissal of the amended complaint; thus, his motion for judgment on the pleadings will be granted.

D.   Wexford's Motion

Wexford argues that it is entitled to dismissal because Alvarez has not alleged that it had an official policy or custom proximately causing the underlying constitutional violation. ECF No. 145-1 at 4-5. Alvarez argues that the amended complaint alleges sufficient facts to support a reasonable inference that Wexford had policies and procedures that resulted in deliberate indifference to Alvarez's medical needs. ECF No. 152-1 at 2.

*Respondeat superior* liability generally does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Nedd v. Correctional Med. Serv.*, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992) (*citing Powell v. Shopco*

*Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982)). *Respondeat superior* liability may apply "when an official policy or custom of the corporat[e defendant] causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, (1978) (execution of government policy by lawmakers may give rise to municipal liability under § 1983); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982)(extending the doctrine to private entities).

Here, Alvarez alleges that Wexford, as UMC, determined which health care services for inmates housed at MDOC were necessary or appropriate. ECF No. 114 ¶ 4. As to his left knee, Alvarez alleges various delays in receiving medical treatment. Although in November 2004 an orthopedic doctor recommended an MRI, Alvarez initially received an X-ray; more than three years later, in November 2007, Alvarez received the MRI, which revealed a chronic bucket handle tear of the lateral meniscus that required immediate surgery. *Id.* ¶¶ 13, 15. In April 2008, after performing the surgery, Dr. Bennett recommended that Alvarez receive a meniscus implant to prevent further injury. *Id.* ¶ 16-17. Seventeen months later, in September 2009, Dr. Bennett ordered that Alvarez receive the implant. *Id.* ¶ 19. An additional year passed before Alvarez

received the left meniscus implant.  *Id*.  ¶¶ 19-20.

Wexford contends that the portion of Alvarez's amended complaint regarding his left knee injury is "devoid of any facts" about Wexford.  ECF No. 156 at 4-5.  However, Wexford overlooks the preceding allegation that Wexford had been responsible for approving health care services.  *See* ECF No. 114 ¶ 4.  Alvarez has not alleged that Wexford had an official policy of denying medical care;[18] however, Wexford's responsibility for approving healthcare services and the lengthy delays in providing those services for Alvarez support a reasonable inference that Wexford customarily denied care.  A fact-finder could reasonably conclude that Wexford was deliberately indifferent to Alvarez's medical needs as to his left knee.[19]  *See Monell*, 436 U.S. 690-91 (entities "may be sued for constitutional deprivations visited pursuant to . . .

_____

[18] *Cf. Chance v. Spears*, No. CIVA 2:08-1156, 2009 WL 3768736, at *4 (S.D.W. Va. Nov. 10, 2009)(co-defendant had "informed Plaintiff that Wexford 'does not do MRI's'").

[19] *Cf. Toomer v. Wexford Med. Health Care Provider*, No. CIV.A. DKC-13-3072, 2015 WL 858157, at *11 (D. Md. Feb. 26, 2015)(dismissing complaint when the plaintiff "pointed to no action or inaction on the part of Wexford that resulted in a constitutional injury"); *Vance v. Shearin*, No. CIV.A. ELH-14-272, 2015 WL 433666, at *18 (D. Md. Jan. 30, 2015)(granting summary judgment when the plaintiff had "neither allege[d] nor present[ed] any evidence that his constitutional rights were violated due to Wexford's policy or custom"); *Wimbush v. Matera*, No. CIV. JKB-11-1916, 2013 WL 3832446, at *3 (D. Md. July 23, 2013)(dismissing complaint when the plaintiff failed to allege "any decision, action or failure to act by Wexford in its role as a [UMC]").

'custom' even though such a custom has not received formal
approval").

As to his right knee, Alvarez alleges that Wexford
repeatedly denied his requests to consult an orthopedic doctor
despite roughly two years of complaints about "pain, weakness,
instability[,] and dislocation in his right knee."  *Id.* ¶ 28-
29.  In 2011, Wexford also denied Alvarez the arthroscopic
surgery recommended by Dr. Krishnaswamy; instead, Alvarez
received physical therapy that worsened his symptoms.  *Id.* ¶ 31.
Although in late 2012 Drs. Krishnaswamy and Bennett again
recommended the arthroscopic surgery, as of February 2014,
Alvarez had not received the surgery.  *Id.* ¶ 35.

Wexford contends that the facts alleged about Alvarez's
right knee "are insufficient . . . to reasonably and plausibly
infer a policy and custom" because "an 'isolated, unprecedented
incident' of medical deprivation is insufficient to prove a
custom of deliberate indifference."  ECF No. 156 at 6 (*quoting
Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000))(alterations
omitted).  *Doe*, however, declined to find a policy or custom
because the allegedly unconstitutional search of a methadone
clinic "was the first of its kind," 225 F.3d at 456.  Here,
Alvarez alleges repeated denials of his requests to see the
orthopedic doctor and denial and delay of the recommended
surgery on his right knee.  ECF No. 114 ¶¶ 28-35.  Thus, Alvarez

19

has not--as Wexford contends--alleged "scattershot accusations
of unrelated constitutional violations," ECF No. 156 at 7
(*quoting Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)),
but conduct from which the Court may reasonably refer
"persistent and widespread" deliberate indifference to his
medical needs as to his right knee, *see Carter*, 164 F.3d at 218
(affirming summary judgment when plaintiff "offer[ed] evidence
of a wide range of unrelated incidents" but offered "no relevant
incident prior to her own case of which the City could have had
knowledge and in which it acquiesced").  Although the evidence
may ultimately show that Wexford did not have a policy or custom
that resulted in deliberate indifference to Alvarez's medical
needs, at this stage, Alvarez has plausibly alleged that Wexford
had such a custom.[20]

Accordingly, Wexford is not entitled to dismissal of the
amended complaint; its motion for judgment on the pleadings will
be denied.

---

[20] Wexford argues that "the allegations against [it] are
identical to those alleged against Corizon."  ECF No. 145-1 at
4.  Wexford reasons that because the Court granted Corizon's
motion to dismiss, Alvarez's complaint against Wexford must also
be dismissed.  *Id.*  There are clear differences, however,
between the allegations against Corizon and Wexford.  As noted
above, Alvarez had alleged Wexford's role in evaluating the need
for health care services, and, in that role, denied and delayed
approval for medical care.

III.    Conclusion

For the reasons stated above, Alvarez's motion for reconsideration and Wexford's motion for judgment on the pleadings will be denied; Moss's motion for judgment on the pleadings will be granted.

___6/24/15___
Date

William D. Quarles, Jr.
United States District Judge