IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

BRUMAN STALIN ALVAREZ,  *

Plaintiff,  *

v.  *  Civil No.: WDQ-10-179

CORRECTIONAL MEDICAL SERVICES,  *
INC., et al.
  *
Defendants.

\*\*\*

MEMORANDUM OPINION

Bruman Stalin Alvarez sued Wexford Health Sources, Inc. ("Wexford"), and others[1] (the "Defendants"), under 42 U.S.C. §1983[2] for violating his Eighth Amendment rights. Pending are

---

[1] Alvarez also sued Correctional Medical Services, Inc., which is now known as Corizon, LLC ("Corizon"), John Moss, P.A., Barbara Steele, H.S.A., and Motti Mulleta, M.D. ECF No. 114. The Court dismissed all claims against Corizon, Steele, and Moss. ECF Nos. 150, 159. Corizon's counsel declined to accept service for Mulleta because he is no longer employed by Corizon. See ECF Nos. 5, 32 at 1 n.32. Because Mulleta has not been served with the complaint (or the amended complaint) within the time required by Rule 4(m), Alvarez was ordered to show cause why claims against Mulleta should not be dismissed without prejudice. See Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time."); ECF No. 159 (giving Alvarez 14 days from June 24, 2015 to show cause). Alvarez has not responded. Accordingly, the amended complaint will be dismissed as to Mulleta.

[2] Under § 1983,
> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United

Wexford's motion for reconsideration, ECF No. 162, Alvarez's motion to withdraw as attorney (filed by counsel), ECF No. 165, and Alvarez's *pro se* motion to appoint counsel, ECF No. 167. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, Wexford's motion will be granted; Alvarez's motions will be denied as moot.

I. Background

A. Facts[3]

Alvarez is an inmate at the Jessup Correctional Institution ("Jessup"). ECF No. 114 ¶ 2. Wexford "was the Utilization Management Contractor [("UMC")] for the Maryland Department of Correction [("MDOC")] during the relevant time period." *Id.* ¶ 4. As UMC, Wexford "evaluat[ed] . . . the appropriateness, medical need[ for,] and efficiency of health care services" for the MDOC. *Id.* On July 1, 2012, "Wexford became the medical

---

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (2012).

[3] The facts are from the amended complaint. ECF No. 114. On a motion for judgment on the pleadings, at issue in this motion for reconsideration, the well-pled allegations in the complaint are accepted as true. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002); *see also Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

2

services provider for the [MDOC]." *Id.*[4] In that capacity, Wexford was "legally responsible for the operation of . . . Jessup['s] . . . hospital and for the medical care and welfare of all inmates of the prison." *Id.*

1. Alvarez's Left Knee

On May 31, 2002, Alvarez first complained to Jessup medical personnel about pain in his left knee. *Id.* ¶ 10. In June 2004, Alvarez again complained that his left knee hurt and caused "a sensation as though there were pieces of rocks in the knee"; he also had a decreased range of motion. *Id.* ¶ 11.

On September 28, 2004, Alvarez was seen by an orthopedic doctor who suspected Alvarez had a partial patellar tendon tear. *Id.* ¶ 12. On October 6, 2004, after continued pain, Alvarez requested an MRI (magnetic resonance imaging) of his left knee. *Id.* On November 16, 2004, the orthopedic doctor requested that Alvarez receive an MRI. *Id.* ¶ 13. On December 10, 2004, Alvarez received an X-ray of his left knee. *Id.*

Between January 2005 and November 2007, Alvarez routinely complained to Mulleta and Moss about "excruciating pain" in his left knee. *Id.* ¶ 14. Mulleta and Moss prescribed pain medication, but Alvarez's pain continued. *Id.* A November 28,

---

[4] Corizon provided medical services to MDOC from the time Alvarez's claim arose until July 1, 2012. ECF No. 114 ¶ 3.

3

2007 MRI of Alvarez's knee revealed a chronic bucket handle tear[5] of the lateral meniscus that required immediate surgery. *Id.* ¶ 15.

On April 1, 2008, Alvarez had surgery on his left knee. *Id.* ¶ 16. The surgery was performed by Dr. Craig Bennett at the James L. Kernan Medical Center. *Id.* After the surgery, Dr. Bennett recommended that Alvarez receive a meniscus implant to prevent additional injury. *Id.*

In August 2008, Alvarez began having significant pain in his left knee, numbness in his left toes, and locking of the left knee. *Id.* ¶ 17. Alvarez requested the meniscus implant recommended by Dr. Bennett. *Id.*

On September 18, 2009, Alvarez was seen by Dr. Bennett, who ordered that Alvarez be scheduled for the left meniscus implant. *Id.* ¶ 19. On September 3, 2010, Alvarez received the left meniscus implant. *Id.* ¶ 20. However, Alvarez continued to have intermittent pain in his left knee. *Id.* ¶ 21.

In January 2011, Alvarez received an MRI of his left knee, which revealed scar tissue needing removal. *Id.* ¶ 22. On July 26, 2011, Alvarez had surgery to remove the scar tissue. *Id.*

---

[5] "A bucket handle tear is a tear around the rim of the meniscus," which causes "the central portion (i.e., the bucket-handle) to displace into the joint." Stacey Vaughn, *What does a bucket have to do with a knee? Crack this knee coding mystery* (July 5, 2011), http://www.justcoding.com/268198/What-does-a-bucket-have-to-do-with-a-knee-Crack-this-knee-coding-mystery.

4

Dr. Bennett recommended that Alvarez use an unloader brace for his left knee; despite several requests, Alvarez has not received the brace. *Id.* ¶ 23.

In November 2012, Alvarez had a third arthroscopic surgery on his left knee. *Id.* ¶ 24. On May 13, 2013, during a consultation for both knees, Dr. Ashok Krishnaswamy at Bon Secours Hospital ("BSH") noted that Alvarez's left knee symptoms continued to worsen. *Id.* ¶ 25.

2. Alvarez's Right Knee

In July 2009, Alvarez fell in the shower and injured his right knee. *Id.* ¶ 27. On July 29, 2009, Alvarez was seen by Moss for the right knee injury; Moss noted damage to Alvarez's right meniscus. *Id.*

From 2009 to 2011, Alvarez "complained of pain, weakness, instability[,] and dislocation in his right knee." *Id.* ¶ 28. Despite numerous complaints of pain, between April 2010 and July 2011, Wexford denied Alvarez's requests to consult an orthopedic doctor. *Id.* ¶ 29.

On August 23, 2011, Alvarez was seen by an orthopedic doctor. *Id.* ¶ 30. On September 2, 2011, Alvarez received an MRI of his right knee, revealing a lateral meniscus tear. *Id.* On October 21, 2011, Alvarez was seen by Dr. Krishnaswamy, who recommended arthroscopic surgery on Alvarez's right knee. *Id.* ¶ 31. Wexford denied the surgery. *Id.*

Alvarez continued to have pain in his right knee and requested the arthroscopic surgery recommended by Dr. Krishnaswamy. *Id.* ¶ 32. Alvarez received physical therapy for his right knee, which aggravated his symptoms. *Id.*

On August 3, 2012, Alvarez was seen by Dr. Krishnaswamy, who again recommended arthroscopic surgery on Alvarez's right knee. *Id.* ¶ 33. On October 1, 2012, Dr. Bennett noted that Alvarez was a candidate for arthroscopic surgery on his right knee. *Id.* ¶ 34.[6] Alvarez continues to have pain in both knees. *Id.* ¶¶ 26, 36.

B.   Procedural History

On January 25, 2010, Alvarez sued the Defendants, alleging violations of the Eighth Amendment to the United States Constitution. ECF No. 1. On February 3, 2014, Alvarez filed an amended complaint. ECF No. 114.

On October 15, 2014, the Court dismissed all claims against Corizon and Steele, and dismissed some claims against Moss. ECF No. 150. On June 24, 2015, the Court dismissed the remaining claims against Moss and denied Wexford's motion for judgment on the pleadings. ECF No. 159.

On July 8, 2015, Wexford moved for reconsideration of this

---

[6] According to the amended complaint, as of February 3, 2014, Alvarez had not received the arthroscopic surgery on his right knee. *Id.* ¶ 35. However, the record shows that on March 27, 2014, Alvarez had arthroscopic surgery on his right knee. ECF No. 152-1 at 6.

6

Court's June 24, 2015 Order denying its motion. ECF No. 162. On July 24, 2015, Alvarez opposed the motion. On August 10, 2015, Wexford replied. ECF No. 166.[7]

II. Analysis

A. Legal Standard for Reconsideration

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration. *Auto Services Co. v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008).[8] A party may move to alter or amend a final judgment under Rule 59(e), or for relief from a final judgment or order under Rule 60. *See* Fed. R. Civ. P. 59(e), 60. Generally, interlocutory orders are subject to modification under Rule 54(b) "prior to the entry of a final judgment adjudicating the claims to which they pertain." *Williams v. Cnty. of Westchester*, 171 F.3d 98, 102 (2d Cir. 1999); Fed. R. Civ. P. 54(b). Because the Court's June 24, 2015 Order was interlocutory, Rule 54(b) governs.[9]

---

[7] On July 27, 2015, Alvarez moved to withdraw as attorney. ECF No. 165. On August 19, 2015, Alvarez moved to appoint counsel. ECF No. 167. The motions are unopposed. *See* Docket.

[8] *But see* Local Rule 105.10 (D. Md. 2014) ("Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider issued by the Court shall be filed with the clerk not later than fourteen (14) days after entry of the order.").

[9] A "judgment" is "a decree and any order from which an appeal lies." *Auto Servs. Co.*, 537 F.3d at 856 (*quoting* Fed. R. Civ. P. 54(a)) (internal quotation marks omitted). An appeal lies when the Court renders a final judgment. *Hinton v. Two Attorneys At Law*, 816 F.2d 672 (4th Cir. 1987). Because the

7

Under Rule 54(b), "any order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).[10] Thus, when merited, a district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).[11] Resolution of the motion is "committed to the discretion of the district court," *id.* at 515, and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (internal citations omitted).

Although Rule 60(b) applies only to final judgments or orders, a court may consider the reasons in that rule when deciding whether to grant relief under Rule 54(b).[12] *See*

---

Court's June 24, 2015 Order adjudicated the rights and liabilities of fewer than all of the parties and claims, it was interlocutory. *Id.*; Fed. R. Civ. P. 54(b).

[10] *See Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL 3633339, at *4 (D. Md. Oct. 27, 2009).

[11] *See also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.").

[12] Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b).

8

*Fayetteville Investors*, 936 F.2d at 1470; *Mateti*, 2009 WL 3633339, at *4. Relief under Rule 60(b) is not authorized when the movant merely asks the Court to "change its mind." *Pritchard v. Wal-Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001). However, as a general rule, "review of an interlocutory order under Rule 54 is not subject to the restrictive standards of motions for reconsideration of final judgments under Rule 60." *Fayetteville Investors*, 936 F.2d at 1472.

B. Wexford's Motion

The Eighth Amendment bars "unnecessary and wanton infliction of pain" by its prohibition of cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).[13] To state an Eighth Amendment claim for denial of medical care, a prisoner must allege actions or omissions amounting to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

*Respondeat superior* liability does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Nedd v. Correctional Med. Serv.*, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992) (*citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982)). However, a corporation

---

[13] "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

9

implementing government functions--such as the provision of prison medical care--may be liable "when an official policy or custom of the corporat[e defendant] causes the [prisoner's] alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, (1978); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

This Court previously found that although Alvarez had not alleged that Wexford had an official policy of denying medical care, Wexford's responsibility for approving healthcare services and the delays in providing those services for Alvarez's left and right knee injuries supported a reasonable inference that Wexford customarily denied care. ECF No. 158 at 18, 20. Wexford contends that Alvarez's allegations that it was responsible for approving or denying care are insufficient to show that Wexford had a policy or custom of delaying or denying medical care--or a reasonable inference thereof. ECF No. 162-1 at 9-11.[14] The Court agrees.

Generally, the failure to allege a specific policy or custom "is fatal to a *Monell* claim." *Lapier v. Prince George's*

---

[14] Alvarez's response is limiting to incorrectly arguing that Rule 59(e)--and not Rule 54(b)--applies to Wexford's motion; he has not addressed the substance of Wexford's argument. *See* ECF No. 164 at 2-4.

Cnty., Md., No. 10-CV-2851 AW, 2012 WL 1552780, at *6 (D. Md. Apr. 27, 2012) (citing Walker v. Prince George's County, Md., 575 F.3d 426, 431 (4th Cir. 2009) (internal quotation marks omitted).[15] However, a policy or custom "may . . . be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of [the corporate defendant's] employees." Milligan v. City of Newport News, 743 F.2d 227, 229-30 (4th Cir. 1984).[16] The policy "must still be shown to have been the 'moving force of the constitutional violation' specifically charged in order to create . . . liability." Id. at 230 (quoting Polk County v. Dodson, 454 U.S. 312, 326, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981)).

Here, Alvarez alleges delayed medical treatment and that Wexford was responsible for approving medical care. ECF No. 4, 114 ¶¶ 13-20, 28-29, 31, 35. However, that Wexford was responsible for approving medical care is insufficient to imply that it denied medical care "in the face of a *known history of widespread constitutional deprivations.*" Milligan, 743 F.2d at

---

[15] Specificity is required to ensure that trials do not "stray[] off into collateral accusations of marginally related incidents." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (internal citations and quotation marks omitted).

[16] See also Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983) (official policy may be inferred from inaction when it constitutes 'deliberate indifference' to constitutional injuries").

11

230 (emphasis added) (affirming dismissal when complaint lacked facts alleging "known, widespread conduct by . . . employees"). Without more, permitting Alvarez's suit to proceed would be contrary to the U.S. Supreme Court's directive that in suits alleging omissions resulting in deliberate indifference, "rigorous standards of culpability and causation must be applied to ensure that the [defendant] is not held liable solely for the actions of its employee." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997), *quoted in Carter*, 164 F.3d at 218; *see also Lapier*, 2012 WL 1552780, at *6 ("sparseness of Plaintiff's allegations" about municipality favored dismissal). Accordingly, Wexford's motion for reconsideration will be granted; the Court will dismiss the amended complaint as to Wexford.[17]

---

[17] Although not raised by Wexford, it is well settled that a plaintiff cannot prevail in a policies and procedures claim absent a constitutional violation by an employee or a subordinate. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) (per curiam) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a . . . corporation based on the actions of one of its officers when [the fact-finder] has concluded that the officer inflicted no constitutional harm."). Thus, the Court's dismissal of deliberate indifference claims against the individual defendants means that Alvarez's claim against Wexford must also be dismissed. *See Bridges v. Keller*, No. 1:10CV113, 2012 WL 3239774, at *10 (W.D.N.C. Aug. 7, 2012) aff'd, 519 F. App'x 786 (4th Cir. 2013) (dismissing *Monell* claim when plaintiff failed to adequately allege deliberate indifference by employees); *see also J & J Sports Prods., Inc. v. Santillan*, No. 1:11CV1141, 2012 WL 6738316, at *5 n.3 (M.D.N.C. Dec. 28, 2012) *report and recommendation adopted*, No.

III.  Conclusion

For the reasons stated above, Wexford's motion for reconsideration will be granted; Alvarez's motions to withdraw as attorney and to appoint counsel will be denied as moot.

11/12/15
Date

William D. Quarles, Jr.
United States District Judge

---

1:11CV1141, 2013 WL 179949 (M.D.N.C. Jan. 17, 2013) (failure to raise basis for dismissal "does not affect the Court's authority to dismiss on [that] basis"); *Allran v. New York Fed. Reserve Bank*, No. 3:10CV200-GCM, 2010 WL 2163281, at *1 (W.D.N.C. May 27, 2010) *aff'd sub nom. Allran v. Wells Fargo*, 424 F. App'x 198 (4th Cir. 2011) (same).